IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

CATHERINE GARRISON                                                    PLAINTIFF

v.                             Case No. 2:24-cv-00020-JM

DUMAS PUBLIC SCHOOL DISTRICT                               DEFENDANT

<u>ORDER</u>

Catherine Garrison, a former teacher for the Dumas Public School District, filed this action alleging that her employer interfered with her rights under the Family and Medical Leave Act of 1993 (FMLA). The District denies her allegations of interference and has filed a motion for summary judgment (Doc. No. 12) which is ripe for determination. For the reasons stated below, the motion is granted.

<u>Background</u>

Garrison taught five ninth-grade English classes and two communications classes at Dumas High School (DHS) when she was involved in a motor vehicle accident on September 15, 2022. Her injuries were severe and included a broken femur and a shattered elbow. She requested and was granted continuous FMLA leave from September 16, 2022 through December 18, 2022. Garrison did not heal sufficiently to return to the classroom by the end of her FMLA leave. She utilized her short-term disability benefits and did not return to her position in the classroom until February 7, 2023. Garrison retired from the District at the end of the following school year.

In the immediate wake of Garrison's accident, the DHS assistant principal, Amber Brown-Madison, took over her two communications classes. The District reached out to two retired teachers in an attempt to hire a long-term substitute teacher that was qualified to teach

Garrison's English classes but both declined. In the alternative, the District placed her English students on an online learning program, Edmentum.[1] Brown-Madison, who was certified to teach Garrison's classes, initially "kept up with the students' work on the Edmentum program" while substitutes monitored the classroom. (Doc. No. 12-2, ¶ 7). On September 29, 2022 Garrison contacted Brown-Madison to let her know that Garrison had created a Google Classroom for her English classes and would make specific Edmentum assignments for her students there.

The record reflects the following communications between Garrison, Brown-Madison, and the DHS principal, Jacob Lanehart (with the administrators' communications italicized):[2]

- On September 28, 20202, Garrison messaged Brown-Madison that she had created a Google classroom that the students needed to join so they could access the Edmentum assignments and other work and guided notes she would be posting. She concluded, "Please let me know if this is gonna work. Thanks."

- About this same time, *Brown-Madison messaged Garrison, "Good afternoon, how are you? . . .. I saw the class you set up in Edmentum and it says RTI. Is that what you would like all your students to do and complete?"* (Doc. 17-5, p. 10). Garrison responded "Yes. All [students] should do the modules I have open."

- On October 7, Garrison emailed Brown-Madison and Lanehart the following: "I need all my 9th graders to enroll in my Google class ASAP! I am making specific Edmentum assignments and will score them." (Doc. No. 17-5, p.2).

- *Brown-Madison responded that she would go to each class to make sure it was done.*

- On October 11, Garrison emailed her students—copying Brown-Madison and Lanehart—about joining Google Classroom, making up missing assignments, and advising them that "material from these assignments WILL be on your semester exam!"

- *Brown-Madison responded that she would check in again to make sure all the students had joined.*

---

[1] Garrison previously used Edmentum (an online platform that provided an entire course of instruction with related materials) as a teaching tool but had not introduced her students to it before her accident.

[2] Taken from the exhibits to Garrison's SUMF response. (Doc. No. 17-5, -7).

- On October 14, Garrison emailed Brown-Madison, "I sent you the two grades I would like to add to Eschool for ninth grade English. Typically, I drop one classroom grade and one quiz grade, but as I cannot really see the impact of that, I will let you make that decision. Thanks so much!"

- *Brown-Madison responded, "Got it, thank you!"*

- On October 24 at 10:34 a.m., *Lanehart forwarded a message to Garrison from a parent asking about a student's missing grade. In the forwarded email, he told the parent that Brown-Madison is putting grades in and that Garrison "is still working with students" on Google Classroom and uploading assignments.*

- On October 24 at 2:16 p.m., Garrison sent the following email to Brown-Madison and Lanehart:

   I have carefully reviewed the gradebook sheet sent to me. I see that the grades I submitted for the first two required Edmentum assignments were higher in many cases that what I submitted based on the due dates I had assigned. I can only assume that students were allowed to redo the work after I graded it. Therefore, I feel that the grades should stand as they are. I see that several parents are disappointed that their students have Bs and Cs, but the last two grades were heavily weighted and would have only improved those students' scores.

   I cannot tell if any low grades were dropped. I typically always use the gradebook category feature that lets me drop the lowest quiz score and the lowest classwork score because I have serious rigor in my classes. However, if you did not use it, that is fine.

   Please note that I am grading and providing feedback to the students this nine weeks through Google Classroom.  Please do NOT reset any mastery tests. Students have two opportunities. To retake a mastery test, all they have to do is go back through the tutorial. I AM locking assignments following due dates.  Please do NOT unlock them. I also look at the submission dates for the Guided Notes compared to the date on the mastery test. Students are required to complete and submit the notes BEFORE taking the mastery test. Some just have not followed instructions until they got zeros. I have that information in all assignments and have announced it in the class stream.

- *Brown-Madison responded explaining why the mastery testes were unlocked* (computer trouble, wifi issues, absences), concluding *"Feel free to let me know if you have any more questions."*

- On November 11, 2022, *Brown-Madison emailed Garrison asking if she was going to send progress report grades for the school to insert into the platform or*

*if she would be inserting them herself.*

- Garrison responded "I cannot access Eschool via my hotspot. The grades in Google Classroom are up to date and accurate. When are progress grades due in?"

- In response*, Brown-Madison stated that the progress grades were due Monday and said "I will get it done. Would you like me to wait until Monday and just upload at that time?"*

- Garrison responded yes, for her to please wait.

- On November 15, *Lanehart emailed Garrison that the school was placing her "recruiting/retention incentive employee verification forms" in her mailbox, due to be returned by Friday the 18th to "ensure that checks for the first disbursement will be processed on time."* (This was related to getting an extra check for COVID pay.) (Doc. No. 12-1, p. 82).

- Garrison responded for him to please scan and e-mail her form to her to sign and send back.

- On November 18, *Lanehart emailed Garrison about "increasing student discomfort" as the students are "having trouble with maneuvering through Google classroom and Edmentum." He further stated:*

  *"We are all trying to make it through this difficult situation as best we can. You are commended for providing a way for students to receive some form of instruction as you convalesce. This cohort of students have the unfortunate task of receiving instruction via technology though two of their main courses. It is a lot for this group to undertake while learning the ins and outs of a new school as well. At this time, we believe we can better serve the students if we offer them some grace and understanding. We will continue to assist [the substitute] and the students in the classroom. However, at this time, we would like all the previous assignments for the 2nd nine weeks on Google Classroom and Edmentum to be reopened (no mastery test reopened if students have already had their two attempts) for the students to correct or complete. Let me know if you have any questions or concerns."*

- On November 19, Garrison responded that she "will be happy to reopen the mastery tests, but the Guided Notes is where the learning takes place" and that many zeros were assigned because the students did not complete the notes." She further stated that the substitute could check the remaining modules and let her know if they were completed "fully and BEFORE the student took the mastery test."

- On December 9, *Brown-Madison emailed "Good afternoon, Mrs. Garrison, are*

4

*your students having a semester exam? If so, how would you like us to administer it?"*

- Garrison responded that she did have a semester exam and explained that a fellow teacher would have three different versions to give out as well as having the answer keys.

Other communications were submitted but fall outside the dates of Garrison's FMLA leave.

It was not until Garrison had returned to work that she realized that she did not have to work while on FMLA leave. She filed this complaint alleging that while she was on leave, she was "continuously contacted" by the District, "pressured into returning to work," and "forced to perform tasks," and that these actions constituted interference with her entitlement to FMLA leave pursuant to 29 U.S.C. § 2615. (Doc. 1, ¶¶ 36, 40). The District has moved for summary judgment arguing that Garrison voluntarily worked while she was on FMLA leave, assuming control of her English classes without being asked to by the District, and that this does not constitute impermissible interference under the FMLA.

### Summary Judgment Standard

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The court must assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir. 1992).

<u>Discussion</u>

The FMLA entitles eligible employees to a total of 12 workweeks of leave during any 12-month period for several reasons including "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a). It is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" this right. 29 U.S.C.A. § 2615 (a)(1). "To prevail on an interference claim, an employee has the burden of proving that she was entitled to a benefit under the FMLA, that the employer "interfered with," i.e., denied the employee, that entitlement, and that the reason for denial was connected to the employee's FMLA leave." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1158 (8th Cir. 2016) (quoting *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1050 (8th Cir. 2006)). It is undisputed that Garrison was an eligible employee with a qualifying serious health condition. She requested and was granted twelve continuous weeks of FMLA leave. The question is whether the District interfered with her FMLA leave.

The FMLA does not define interference. According to the regulations governing the FMLA, "[o]ne way an employer interferes with an employee's entitlement to FMLA leave is by 'discouraging an employee from using such leave.' *Id.* (quoting 29 C.F.R. § 825.220(b)). However, "an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a light duty assignment while recovering from a serious health condition" does not constitute interference with FMLA entitled benefits. *Id. (*quoting 29 C.F.R. § 825.220(d)). Courts have "drawn a distinction between, on the one hand, receiving nondisruptive communications such as short phone calls requesting the employee to pass on institutional knowledge or property as a professional courtesy, and, on the other hand, requiring the employee to complete work-related tasks or produce work product." *Thompson v. Kanabec Cnty.*, 958 F.3d

because 698, 706 (8th Cir. 2020) (quoting *Massey-Diaz* at 1158-59).

The District relies on the affidavit of Brown-Madison and Garrison's deposition of Garrison to establish that no one at the District expected or requested Garrison to perform any job duties while on FMLA leave or made the performance of any duties a condition of her employment. Garrison argues in response that "one disputed fact" precludes the entry of summary judgment on her interference claim: "whether she voluntarily worked from home without pay during her FMLA leave, or whether [the District] coerced, pressured, and ordered her to do so." (Doc. No. 18, p. 5). In support of her position that she was pressured or ordered to work by the district, she raises three points.

First, Garrison submits the communications between her and her administrators, *supra,* as evidence that she was "pressured, coerced, and actually ordered"[3] to perform work without pay during her FMLA leave. This characterization, though oft repeated, does not fit the tone or content of those communications.  Garrison admitted in her deposition that no one from the District gave her a direct order to do any work. Rather, she felt pressure because when she communicated with her administrators about what she was doing, they told her they would follow up with her classes about the work; "even though they're not directly pressuring me, they're not doing the opposite either. They're not saying, 'You don't have to do this. You're on FMLA.'" (Doc. No. 12-1, p. 45). She interpreted the District's "absence of discouragement" for her to do the work while on FMLA leave as "encouragement or pressure to make sure it happened." (Doc. No. 12-1, p. 45). But more than subjective belief on the part of the employee is required to find that an employer interfered with rights under the FMLA. *See Massey-Diez*, 826 F.3d at 1160, fn7. ("Massey–Diez's testimony that she subjectively felt she had no choice but to

---

[3] Plaintiff's Response, Doc. No. 18, p. 2.

comply with [her employer's] requests, without any outward manifestation of that feeling communicated to [her employer] or stronger demands on its part than what appears in the record, does not create a genuine dispute as to coercion and involuntariness."). *See also Glover v. Hudson Mem'l Nursing Home, No. 1:22-CV-1072, 2024 WL 759299 (W.D. Ark. Feb. 23, 2024)* (noting that the employee "never expressed reservations" about performing work and there was no evidence that her employer "required [the employee] to work during her time off as a condition of continued employment.")

Second, Garrison she said she felt pressure from the expectations that had been communicated to the teachers at the beginning of the year in the manual "Everything You Wanted to Know About DHS but Were Afraid to Ask." (Doc. 17-3). Under the heading "Attendance for Teacher and Staff," the manual stated that in the event of a teacher's absence:

> Your lesson for the day should already be in Google Classroom. However, teachers are expected to create a substitute folder that will have your roster, class schedule, duty (if applicable), and any other special instructions for your classroom in the folder provided by the office.  Place the folder in a prominent location on your desk.  **With the blended learning format, students should always have an assignment readily available**.

*Id.* (emphasis in original). The manual did not reference FMLA leave, and there is no evidence that anyone from the District directed her to it in connection with her leave. The existence of this manual, without more, is not probative of whether Garrison voluntarily worked while she was on FMLA leave.

Third, Garrison attributes the District's failure to secure a qualified substitute to take over her English classes as evidence of the District pressuring her to work while on FMLA leave. But there is no evidence that the pressure came from the District. She testified that if Brown-Madison had completely assumed her English classes, which she was qualified to do, then Garrison would not have felt pressured to work while on FMLA leave. (Doc. No. 17, ¶ 41.). The District had a

8

plan in place to cover Garrison's FMLA leave using Edmentum and substitute teachers to monitor the students. Plaintiff's belief that she was required to perform her job duties in the absence of a certified English substitute is not evidence that the District coerced or pressured her to perform her job duties while she was on leave as a condition of continued employment. *See Lindsey v. Bio-Med. Applications of Louisiana, L.L.C.,* 9 F.4th 317, 323–24 (5th Cir. 2021). That she initiated contact about working from home, chose to maintain control over her English classes, and was not stopped from doing so by the District does not translate into interference by the District with her FMLA leave. *See Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 632 (6th Cir. 2018).

Garrison testified that she felt "very betrayed" by the District once she returned to work and subsequently learned that she had not been required to perform any duties while she was on FMLA leave. She testified that she worked roughly five days a week, six hours a day, for a majority of the time that she was on leave. (Doc. No. 12-1, pp. 59-60). She also testified that she had no internet at her rural home and so she "had to go to the front door of her house and sit at her desk with the front door open, in fall and winter, to use her hotspot to perform work" which was painful for her given her severe injuries. (Doc. No. 17, ¶ 19). There is no evidence that the District was made aware of the amount of time Garrison was working or under what conditions. Garrison never expressed any reservations to the District about the work she was doing.

Without citing to any authority, Garrison maintains it was the District's responsibility to tell her that she was not expected to work while she was on FMLA leave. The District provided Garrison with a Notice of Eligibility & Rights and Responsibilities under the FMLA as required. 29 C.F.R. § 825.300. (Doc. No. 12-1, pp. 153-155). That publication explained that she had the right "to take unpaid, job-protected FMLA leave." It is not for this Court to place additional

responsibilities on an employer covered by the FMLA.

Based on this record, the Court finds that a reasonable jury could not find that the District interfered with Garrison's FMLA leave.

<u>Conclusion</u>

For the reasons stated above, Defendant's motion for summary judgment (Doc. 12) is GRANTED. The case is dismissed with prejudice.

IT IS SO ORDERED this 15th day of July, 2025.

_____
UNITED STATES DISTRICT JUDGE